## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| In re *Ex Parte* Application of )<br><br>JANE DOE,<br>　　　　　　　　　　Applicant. )<br>　　　　　　　　　　　　　　　) | Case No. 3:24-MC-00102-OAW |

FOR AN ORDER PURSUANT TO 28 U.S.C )
§1782 TO CONDUCT DISCOVERY FOR )
USE IN FOREIGN PROCEEDINGS. )

---

## SECOND DECLARATION OF NIAZI FETTO KC

---

I, Niazi Fetto KC, declare under penalty of perjury, pursuant to 28 U.S.C. §1746 that the following is true and correct:

**Introduction**

1. I am a barrister (King's Counsel) at 2 Temple Gardens Chambers, London, England. I am instructed by Mishcon de Reya LLP, counsel to Ali Fayed. I make this Second Declaration in support of Mr Fayed's opposition to the *Ex Parte* Application for Discovery pursuant to 28 U.S.C. §1782 brought by Jane Doe against Mr Fayed dated 12 November 2024 and in opposition to Jane Doe's Ex Parte Motion for Leave to Proceed Anonymously.

2. I have practised in the fields of personal injury and clinical negligence throughout my career (I was called to the Bar in 1999). I act for claimants and defendants in cases of both negligently and deliberately inflicted harm, including adult and child sexual abuse, and have extensive experience of advising upon and litigating limitation points in both contexts.

3. I was a senior member of the UK Foreign Office's counsel team in the Kenyan Emergency Group Litigation, the largest group action ever faced by the UK Government, whose outcome ultimately turned upon the English High Court's refusal in that case to disapply the limitation period in its discretion under s.33 Limitation Act 1980 (*Kimathi v Foreign & Commonwealth Office* [2018] EWHC 1305 (QB)). Thereafter I represented the Department for Health and Social Care in its defence of claims of historical sexual abuse by former child migrants from the UK to Zimbabwe and Australia.

4. I am currently representing a cohort of over 50 child and adult claimants in their High Court claims alleging negligent and abusive treatment, including sexual abuse, in various inpatient mental health units in England, a significant number of whom will face limitation defences and will need to rely upon the s.33 discretion.

5. This Declaration is prepared following receipt of the Declarations of Phillippa Kaufmann KC and Richard Meeran, both dated 18 February 2025 and filed on 20 February 2025. ECF 26; ECF 27.[1] Those declarations refer to the proceedings which have been issued in England, namely *JOA v Harrods Ltd* ("the "English Proceedings"). The claim is for damages for personal injury.

6. Those Declarations raise the following matters which I have been asked to address in this document:

   a. An overview of the English Proceedings and an explanation of English civil proceedings and the applicable rules of procedure;
   b. The reason for and effect of the stay of the English Proceedings (Meeran §5);
   c. The collateral use of disclosed documents (Meeran §§15 – 18); and
   d. The effect of s33 Limitation Act 1980 (Kauffman §§14 – 41; Meeran §§19-28).

9. I address those matters in this Declaration in turn.

**The English Proceedings and relevant rules of procedure**

Overview

10. The Declaration of Mr Meehan describes the following procedural chronology for the English Proceedings:

| | |
|---|---|
| 23 December 2024 | The Claimant (i.e Jane Doe) files her Claim Form with the English court (Meeran Exhibit 1) |
| 23 December 2024 | The Claimant files an application for anonymity, requesting that she be identified in her English proceeding as 'JOA' (Meeran ¶4) |
| 21 January 2025 | The Claimant applies for a stay of proceedings for 4 months, until 21 May 2025 (Meeran ¶5) |
| 17 February 2025 | Order: with the consent of the Defendant, the proceedings are stayed until 21 May 2025. |

Compensation Scheme

11. I understand also that the only Defendant in the English Proceedings, Harrods Ltd has publicly stated that it has instigated a compensation scheme ('the Compensation Scheme') administered by an English law firm, MPL Legal. In its press statement it stated that "... *it has been our priority to settle claims in the quickest way possible, avoiding lengthy legal proceedings for the women involved. This process is still available for any current or former Harrods employees.* Harrods invited its complainants to contact its lawyers, MPL Legal. (https://response.harrods.com/).

12. MPL Legal, in a web page with frequently asked questions concerning the Compensation Scheme, explains that they are a law firm instructed by Harrods in relation to claims arising from alleged acts of sexual abuse by Mohamed Al-Fayed as Chairman of Harrods, including assisting Harrods in the development of the Compensation Scheme (see https://mpllegal.com/wp-content/uploads/2024/11/FAQ.pdf).

13. The web page describes the '*principal aim of this process*' as being '*to compensate those who, in connection with Harrods, and their associated companies, were subject to sexual abuse by [Mohamed Al] Fayed, such that Harrods would be liable for that abuse in accordance with recognised principles of law*'. It explains that full details of eligibility will be provided 'when the scheme is published following the consultation process', with it being expected that individuals 'will be able to access application forms from 31 March 2025'. The page explains that the process will be designed to compensate individuals quickly. Furthermore, it is stated that "*The purpose of the Harrods compensation scheme is to provide a pathway which is responsive, clear, transparent and fair, with the aim that survivors **should not receive less compensation than were they to pursue alternative forms of redress***. [my emphasis].

14. Due to the minimal information available to me both regarding the Claimant's personal circumstances and allegations and the eligibility criteria for the Compensation Scheme, I am not able to comment upon whether the Claimant has registered an interest with MPL for the Compensation Scheme or is likely to be eligible for compensation in this way. It is a clear possibility.

Procedural regime and relevant rules

15. The English Proceedings are governed by the Civil Procedure Rules ("CPR"), which lay down the requirements described below in relation to the commencement of court proceedings.

16. Proceedings are started (CPR 7.2(1)) by the court 'issuing' the claim form, meaning that it is endorsed with the court's seal in preparation for service upon the defendant(s) (see below). Issuing a claim is the step which must be taken within any limitation period.

17. The claim form must include '*Brief details of claim*' on its face. It is not required to contain full particulars of the claim. However, such particulars ('particulars of claim') must be provided when the claim form is formally served on the defendant(s), or within 14 days of that date (CPR 7.4).

18. In these 1782 proceedings the Claim Form was exhibited by Mr Meeran to his declaration filed on 20 February 2025.

19. A claim form is valid for four months and must be served within that validity period (CPR 7.5(1)). Particulars of claim must likewise be served no later than the end of that period.

20. Where a claimant elects to serve particulars of claim on the defendant separately from the claim form, a copy must be filed with (i.e. sent to) the court within seven days of service (see CPR 7.4(3)).

21. Particulars of claim must set out, concisely, the facts on which the claimant relies, and all other matters specified in the CPR. In cases of personal injury, CPR Practice Direction 16, para 4, requires that a claimant must provide within (or with) their particulars of claim: brief details of their injuries, a schedule of past and future expenses and losses claimed, and any medical report about their injuries.

22. The claim form may generally not be served out of the jurisdiction without the court's permission, except in limited situations (CPR 6.36).

23. A defendant cannot formally respond to a claim if the claim form has not been served, i.e. formally sent to the defendant. Once served, the first step a defendant normally takes is to file and serve, no later than 14 days after service of particulars of claim, an acknowledgement of service (CPR 10.3), signalling their intentions in response to the proceedings. The defendant's next step is to file and serve a defence, within 28 days after service of the particulars of claim. The defence sets out the defendant's full response to the particulars of claim.

24. In light of the above, the procedural position in the English Proceedings is as follows:

   a. The English Proceedings were started (issued) on 23 December 2024.

   b. 23 December 2024 is therefore the date by reference to which the English Court will assess whether the English Proceedings are time-barred.

   c. The English Proceedings have not been served on the Defendant.

25. The claim has been stayed until 21 May 2025 by agreement between the Claimant and the Defendant [ref order], endorsed by the Court. The Order of Senior Master Cook dated 17 February 2025 provides that:

    a.  the Claim Form must be served within 56 days of the stay being lifted.

    b.  Accordingly, the Claim Form must be served by 17 July 2025.

    c.  17 July 2025 is also the latest day by which the Particulars of Claim must be served. They must be filed at court within seven days thereafter, i.e. by 24 July 2025. The time for filing of the acknowledgement of service and/or defence will only start running when the Particulars of Claim are served, so if the full period for service is used by the Claimant, they will be due in August.

26. The Declaration of Mr Meeran states that the reason for the stay is to give time for the parties to comply with the Pre-Action Protocol for Personal Injury Claims. I have not seen the application for the stay, containing the grounds that would have been put before Senior Master Cook, who ordered it, neither am I aware of the reasons given by the Senior Master for that decision. A stay enabling compliance with a relevant pre-action protocol accommodates a range of possibilities in practice, including open and without prejudice communication and exchange of information/documents between the parties/their representatives (see below), and, in the specific context of this case, discussion of and/or engagement with the Compensation Scheme. No doubt this would include participation in the Compensation Scheme.

27. The High Court has the power to extend the present stay. There is no limit on the time for which a stay may be kept in place if there are reasons to justify it.

28. The English civil procedure framework includes protocols for pre-action conduct, which are designed to assist the parties in resolving disputes fairly without the need for litigation and, in cases where litigation cannot be avoided, in identifying and narrowing the issues at an early stage so that the case is prepared efficiently and at proportionate cost. The English courts expect the parties to comply with any pre-action protocol applicable to the category of dispute or, when none applies, with the guidance laid down

by the Practice Direction on Pre-Action Conduct and Protocols. The Practice Direction sets out the following objectives at paragraph 3:

*3. Before commencing proceedings, the court will expect the parties to have exchanged sufficient information to*

> *(a) understand each other's position;*
>
> *(b) make decisions about how to proceed;*
>
> *(c) try to settle the issues without proceedings;*
>
> *(d) consider a form of Alternative Dispute Resolution (ADR) to assist with settlement;*
>
> *(e) support the efficient management of those proceedings; and*
>
> *(f) reduce the costs of resolving the dispute.*

29. Paragraph 6 states:

*6 - Where there is a relevant pre-action protocol, the parties should comply with that protocol before commencing proceedings. Where there is no relevant pre-action protocol, the parties should exchange correspondence and information to comply with the objectives in paragraph 3, bearing in mind that compliance should be proportionate. The steps will usually include—*

> *(a) the claimant writing to the defendant with concise details of the claim. The letter should include the basis on which the claim is made, a summary of the facts, what the claimant wants from the defendant, and if money, how the amount is calculated;*
>
> *(b) the defendant responding within a reasonable time – 14 days in a straight forward case and no more than 3 months in a very complex one. The reply should include confirmation as to whether the claim is accepted and, if it is not accepted, the reasons why, together with an explanation as to which facts and parts of the claim are disputed and whether the defendant is making a counterclaim as well as providing details of any counterclaim; and*
>
> *(c) the parties disclosing key documents relevant to the issues in dispute.*

30. The Pre-Action Protocol for Personal Injury Claims provides for, among other things:

    a.  A letter of claim to be prepared by the claimant and sent to the defendant, setting out a clear summary of the facts on which the claim is based together with an indication of the nature of any injuries suffered, and the way in which these impact on the claimant's day to day functioning and prognosis. Any financial loss incurred by the claimant should be outlined with an indication of the heads of damage to be claimed and the amount of that loss, unless this is impracticable. (Section 5)

    b.  A letter of response on liability to be provided by the defendant within 3 months, with the defendant's version of events if liability is denied, and in that event enclosing, without charge, copies of *'documents in their possession which are material to the issues between the parties, and which would be likely to be ordered to be disclosed by the court, either on an application for pre-action disclosure, or on disclosure during proceedings'*. (Section 6)

    c.  Negotiations between the parties, and/or other alternative dispute resolution, with a view to avoiding litigation if possible. (Sections 8 and 9). As already noted, I would expect this to include reference to and potentially participation in the Compensation Scheme.

31. In *Edwards Tubb v JD Wetherspoon plc* [2011] 1 WLR 1373, CA, Hughes LJ stated at [27(v)]:

> *"The whole ethos of personal injuries litigation since the introduction of the Civil Procedure Rules and its associated protocols is to expect of litigators and parties an equivalent level of openness and communication before and after issue. There may sometimes be costs complications in this "front-loading" of litigation, but the overall concept undoubtedly remains valid. It is an important pillar of the modern system of such litigation that the issue of proceedings should be rendered unnecessary to many claims, and the protocols are designed to achieve this by laying down good practice for pre-issue conduct, including*

> *the obtaining of evidence. Once the pre-action protocol letter is written the parties are expected to engage constructively in, among other things, the selection and instruction of experts. The expectation is that this will be accomplished largely, if not often wholly, before issue of proceedings."*

32. As is clear from the above, the normal (and required) practice is to follow the relevant pre-action process prior to issuing proceedings. Reasons for the issue of proceedings on 23 December 2024, without first following that process, have not been provided in the Claimant's declarations, and Mr Fayed and his US and English lawyers are unaware of the discussions and correspondence between the Claimant and Harrods.

33. Where a claimant is concerned about limitation, proceedings might be issued 'protectively' and not served, and the validity period of the claim form (possibly enhanced by a court-ordered stay) used to follow the pre-action process. Mr Meeran has said that that is the purpose of the stay. On the basis of Mr Meeran's account, it is to be expected that the Claimant and Harrods are now some way into the process of exchanging, and indeed may have already exchanged, 'pre-action' correspondence. That process involves the provision by Harrods to the Claimant of substantial documentary disclosure together with its letter of response.

**The Stay**

34. The English Proceedings are currently stayed. The High Court of Justice of England and Wales ('High Court') has an inherent jurisdiction to 'stay' proceedings, as recognised by s49(3) Senior Courts Act 1981. The jurisdiction is extensive (see *Ebert v Birch* [2000] Ch 484, CA).

35. The same power is reflected in the CPR at rule 3.1(2), which enables the Court to '*stay the whole or part of any proceedings or judgment either generally or until a specified date or event*'.

36. A 'stay' is a halt, not only upon proceedings, but also upon the expiration of any time limit in those proceedings which had not expired when the stay was imposed. Proceedings are effectively frozen at a point in time. The effect of a stay is on every

step which would otherwise be required by the CPR, including the obligation to serve a claim form issued before the stay was imposed (as is the case here). When the stay is lifted, time begins to run again, with the procedure resuming as if it were the moment at which the stay was imposed (see *Grant v Dawn Meats UK* [2018] EWCA Civ 2212).

37. There are various reasons for which the High Court might order a stay after the claim form is issued. One such reason is so that parties may comply with the appropriate pre-action protocol. Other reasons include: allowing the parties to engage in alternative dispute resolution or arbitration (see e.g. *Reichhold v Norway ASA v Goldman Sachs International* [2000] 1 WLR 173, CA), pending legislative changes that would affect the parties' respective positions (see e.g. *Willow Wren Canal Carrying Co Ltd v British Transport Commission* [1956] 1 WLR 213), and where it is convenient that one or more concurrent proceedings should be stayed pending the final determination of other similar or related proceedings (see e.g. *J Bollinger SA v Goldwell Ltd* [1971] RPC 412 at 423).

**Collateral Use**

38. As stated above, early documentary disclosure is part of the standard pre-action process; the parties are expected to disclose key documents <u>before</u> issue of the claim form.

39. It is only once proceedings have been issued and served, and a defence has been served and filed at court, that the court will, in a case of this nature, hold a 'case management conference' – a procedural hearing at which the court gives directions for the onward management of the case. Those directions will almost invariably include an order requiring the parties to give standard disclosure of documents (CPR 31.6), by list and inspection. Standard disclosure requires a party to list and disclose documents including those upon which he relies and those which adversely affect his own case, and covers documents exchanged in accordance with the pre action protocols.

40. The English rules of evidence generally prevent the collateral use of documents disclosed in civil proceedings within the jurisdiction. CPR 31.22 provides that a party to whom a document has been disclosed may only use the document for the purpose of the proceedings in which it is disclosed, except with the permission of either the court

or the disclosing party, or where the document has become part of the public record by being read to or by the court, or referred to at a hearing. There must be a cogent reason for permitting collateral use (*Tchenguiz v Director of the Serious Fraud Office* [2014] EWCA Civ 1409 at [66]).

**English Law on Limitation**

51. When Mr Frost and I prepared Declarations in January 2025 we did not have any knowledge of the nature of the English Proceedings. We now know it is a claim in negligence and trespass to the person for damages for personal injury. I addressed the law of limitation in such claims relatively briefly in my original declaration and do so now in greater detail, taking account of the declaration by Philippa Kaufmann KC.

52. The limitation period in personal injury claims is set down by s11 Limitation Act 1980 which provides, insofar as is material to the instant case (emphasis added):

> (1)***This section applies to any action for damages for negligence, nuisance or breach of duty*** (whether the duty exists by virtue of a contract or of provision made by or under a statute or independently of any contract or any such provision) ***where the damages claimed by the plaintiff for the negligence, nuisance or breach of duty consist of or include damages in respect of personal injuries*** to the plaintiff or any other person.
> ...
> (2)*None of the time limits given in the preceding provisions of this Act shall apply to an action to which this section applies.*
> (3)*An action to which this section applies shall not be brought after the expiration of the period applicable in accordance with subsection (4) or (5) below.*
> (4)*Except where subsection (5) below applies,* ***the period applicable is three years from***—
> (a)***the date on which the cause of action accrued; or***
> (b)***the date of knowledge (if later) of the person injured***.
> …

53. The definition of "personal injuries" is found in s38(1), including:

*'any disease and any impairment of a person's physical or mental condition'*

54. Time does not run against children (under age 18) or 'persons under a disability', i.e. who lack the mental capacity to manage their own affairs (s.28).

Date of Knowledge

55. The date of knowledge, for the purposes of s11(4)(b), is when the claimant knew that the injuries in question were significant (s14(1)(a)), that they resulted from an act or omission alleged to constitute negligence, nuisance or breach of duty (s14(1)(b)) on the part of an identifiable defendant (s14(1)(c)), and where it is alleged that the act or omission was that of a person other than the defendant, the identity of that person and the additional facts supporting the bringing of an action against that defendant (s14(1)(d)).

56. A 'significant' injury is one in respect of which (s14(2)):

*"...the person whose date of knowledge is in question would reasonably have considered it sufficiently serious to justify his instituting proceedings for damages against a defendant who did not dispute liability and was able to satisfy a judgment."*

57. A claimant's knowledge includes both (a) matters which she in fact did know, and (b) knowledge which she might reasonably have been expected to acquire (i) from observable facts; and (ii) from facts ascertainable by her with the help of medical or other appropriate expert advice which is it reasonable for her to seek (s14(3)).

58. In *Spargo v North Essex District Health Authority* [1997] PIQR p235 at p242, Brooke LJ (with whom the other Lord Justices of Appeal agreed) set out the following principles in respect of knowledge:

*(1)The knowledge required to satisfy section 14(1)(b) is a broad knowledge of the essence of the causally relevant act or omission to which the injury is attributable;*

*(2)'Attributable' in this context means 'capable of being attributed to' in the sense of being a real possibility;*

*(3)A plaintiff has the requisite knowledge when she knows enough to make it reasonable for her to investigate whether or not she has a case against the defendant. Another way of putting this is to say that she will have such knowledge if she firmly believes that her condition is capable of being attributed to an act or omission which she can identify (in broad terms) that she goes to a solicitor to seek advice about making a claim for compensation;*

*(4)On the other hand, she will not have the requisite knowledge if she thinks she knows the acts or omissions she should investigate but in fact is barking up the wrong tree: or if her knowledge of what the defendant did or did not do is so vague or general that she cannot fairly be expected to know what she should investigate; or if her state of mind is such that she thinks her condition is capable of being attributed to the act or omission alleged to constitute negligence, but she is not sure about this, and would need to check with an expert before she could be properly be said to know that it was."*

59. A claimant's particular character or intelligence is not relevant to the date of knowledge. It is to be assumed for the purposes of s14(3) that a person who was aware that they had suffered a personal injury serious enough to be something about which they would consult a solicitor if they knew he had a claim, would be sufficiently curious about the causes of the injury to seek whatever expert advice is appropriate (*Adams v Bracknell Forest Borough Council* [2004] UKHL 29; [2004] 3 WLR 89 at [47]).

60. The Court should assume that a person, with the claimant's essential characteristics (such as age and mental capacity), who has suffered a significant injury, would be sufficiently curious to seek expert advice unless there are reasons why a reasonable person in his/her position would not have done so (*Johnson v Ministry of Defence* [2013] P.I.Q.R P7, CA at [24], applying *Adams*). That person will be fixed with the knowledge they would probably have acquired by such advice.

<u>The Court's Discretion to Extend Time</u>

61. The circumstances in which a Court may disapply the time limit in s11 are set out in s33 Limitation Act 1980 (**emphasis** added):

*"(1) If it appears to the court that it would be **equitable** to allow an action to proceed **having regard to the degree to which**—*

    *(a) **the provisions of section 11** or 12 of this Act **prejudice the plaintiff** or any person whom he represents; and*

    *(b) **any decision of the court under this subsection would prejudice the defendant or any person whom he represents**;*

*the court may direct that those provisions shall not apply to the action, or shall not apply to any specified cause of action to which the action relates.*

*…*

*(3) In acting under this section **the court shall have regard to all the circumstances of the case and in particular to**—*

    *(a) **the length of, and the reasons for, the delay on the part of the plaintiff**;*

    *(b) the extent to which, having regard to the delay, **the evidence adduced or likely to be adduced by the plaintiff or the defendant is or is likely to be less cogent than if the action had been brought within the time allowed** by section 11 or (as the case may be) by section 12;*

    *(c) the **conduct of the defendant after the cause of action arose**, including the extent (if any) to which he responded to requests reasonably made by the plaintiff for information or inspection for the purpose of ascertaining facts which were or might be relevant to the plaintiff's cause of action against the defendant;*

    *(d) the duration of **any disability of the plaintiff** arising after the date of the accrual of the cause of action;*

*(e) **the extent to which the plaintiff acted promptly and reasonably once he knew whether or not the act or omission of the defendant**, to which the injury was attributable, might be capable at that time of giving rise to an action for damages;*

*(f) the **steps, if any, taken by the plaintiff to obtain medical, legal or other expert advice and the nature of any such advice**, he may have received.*

*...*

*(7) In this section 'the court' means the court in which the action has been brought.*

*...*

62. There is a vast body of appellate caselaw on the application of s.33. The Court of Appeal's decision in *Carroll v Chief Constable of Greater Manchester Police* [2018] 4 WLR 32, cited by Phillippa Kaufmann KC, is one of the leading cases, containing a useful summary of principles to be applied.

63. There is a limit to the matters which a court may properly take into account under s.33. For example, the Court should not treat as relevant the public interest in a matter proceeding to trial, or the subjective wishes of the parties (see *Ministry of Defence v AB* [2010] EWCA Civ 1317 at [105-6]).

64. Each of the six factors prescribed for consideration by s33(3) informs the court's consideration of the test in s33(1): whether it is equitable for the action to proceed having regard to the balance of prejudice between the parties (see *McGhie v British Telecommunications Plc* [2005] EWCA Civ 48 at [16]).

65. In *Cain v Francis* [2008] EWCA Civ 1451 at [73-4], Smith LJ emphasised that the touchstone of the test is prejudice to the defendant:

*"73. It seems to me that, in the exercise of the discretion, the basic question to be asked is whether it is fair and just in all the circumstances to expect the defendant to meet this claim on the merits, notwithstanding the delay in commencement. The length of the delay will be important, not so much for itself as to the effect it has had. To what extent has the defendant been disadvantaged in his investigation of the claim and/or the assembly of evidence, in respect of the issues of both liability and quantum? But it*

*will also be important to consider the reasons for the delay. Thus, there may be some unfairness to the defendant due to the delay in issue but the delay may have arisen for so excusable a reason, that, looking at the matter in the round, on balance, it is fair and just that the action should proceed. On the other hand, the balance may go in the opposite direction, partly because the delay has caused procedural disadvantage and unfairness to the defendant and partly because the reasons for the delay (or its length) are not good ones.*

*74. Although the delay referred to in section 33(3) is the delay after the expiry of the primary limitation period, it will always be relevant to consider when the defendant knew that a claim was to be made against him and also the opportunities he has had to investigate the claim and collect evidence: see* Gwentoys. *If, as here, a defendant has had early notification of a claim and every possible opportunity to investigate and to collect evidence, some delay after the expiry of three years will have had no prejudicial effect."*

<u>Cases of Substantial Delay</u>

66. In considering the breadth of the discretion in respect of longer periods of delay, the High Court in *TCD v Harrow Council and Others* [2008] EWHC 3048 (QB) held at [35]:

*"Although the discretion is unfettered, and must be addressed in the light of all the individual circumstances of the case, the court should never lose sight of the public policy considerations underlying the legislative regime governing limitation periods. Public authorities, as well as commercial entities and individuals, should not remain exposed indefinitely to the threat of litigation based upon historic allegations. Fairness requires a balancing of all relevant factors and their interests have to be taken into account. There is a public interest in certainty and finality and such considerations must not be lightly discounted, especially not on the basis of sympathy for an individual litigant – even where there is, or might be, a strong case on liability and causation."*

67. Although the length of delay ought not to be looked at in isolation, *"it is reasonable to assume that the longer the period of delay, the more likely it is prejudice will be caused*

*to the defendant"* (*TA v London Borough of Lambeth* [2023] EWHC 3267 (KB) at [69]).

<u>Reasons for delay</u>

68. The Court is required to undertake a subjective inquiry into the reasons for delay by a claimant (s.33(3)(a)) – see the decision of the Court of Appeal in *Coad v Cornwall and Isles of Scilly Health Authority* [1997] 1 WLR 189, CA, *per* Ward LJ at p.195:

> *'To add "on the part of the plaintiff" indicates that it is a subjective inquiry in which the court is there engaged. Having found what the reason is, the court must decide whether it is a good or bad reason or, in the language of Russell L.J. in* Halford v. Brookes *[1991] 1 W.L.R. 428, 436, 438, whether the plaintiff is culpable or not.'*

69. The House of Lords in *A v Hoare* [2008] 1 AC 844 reaffirmed at [41-45] that the Court is required to undertake a subjective inquiry to determine the reasons why the particular claimant failed to institute proceedings in time, distinguishing this from the objective enquiry required by S.14(2) of the Limitation Act 1980.

70. It is incumbent upon a claimant to give a clear explanation for the entirety of the period of delay. In *F v TH* [2016] EWHC 1605 (QB), a case of alleged historical childhood sexual abuse, at [81], Langstaff J refused to exercise his discretion because of the claimants' substantial delay beyond the point at which a reasonable explanation might apply:

> *'… No particular reason has been advanced why either Claimant should have delayed as long as each did. Their delay after having known of the abuse, and been able to talk freely about it, in both cases exceeded the 3 year primary limitation period applicable to their claims, yet no clear explanation was advanced for this. A passage of time beyond the primary limit which begins after a long delay which might be forgiven is not rendered more easily excusable because of the water already under the bridge: to the contrary, it makes taking quick action all the more incumbent on the would-be claimant.'*

71. In *Berry v Calderdale Health Authority* [1998] Lloyds Rep Med 179, CA Waller LJ held at p.185 that '[i]*t is significant, in my judgment, that not only is there no explanation from the plaintiff why she did not go to solicitors earlier but, much more important, there is no explanation from the solicitors as to why nothing was done until July 1993 when the proceedings were eventually issued*'.

72. In *Kamar v Nightingale* [2008] PNLR 15 the claimant brought an action out of time against a barrister who had represented him in criminal proceedings, claiming that negligent representation had caused him injury. Eady J refused to disapply the time limit and held at [30] that, '*Mr Kamar was aware of his mental health problems all those years ago and could have consulted a doctor much nearer the time, with a view to assessing his chances of bringing proceedings for negligence. The delay was, as the judge found, "culpable" and I can see no reasonable excuse for it in this case.*'

73. In *Williams v Johnstone's Estate* [2010] PIQR P5, HHJ McKenna (sitting as a High Court Judge) held that it would be inequitable to allow a claim to proceed where (along with other factors) there was '*simply no adequate explanation for the majority of the additional delay…*' (§25).

74. In *RE v GE* [2015] EWCA Civ 287, a claimant who relied on anxiety regarding her family and a desire to concentrate on her relationship with her boyfriend as justification for not bringing proceedings in time was denied waiver of the limitation period, the Court of Appeal agreeing with the Court below that '*the delay after February 2008 and before commencement of proceedings, was egregious and the explanations proffered do not begin to exonerate the claimant from it*' (*per* McCombe LJ at §70).

75. Finally, in the related cases of *AB* and *EF v Catholic Child Welfare Society* [2016] EWHC 3334 (QB); [2016] EWHC 3334 (QB), HHJ Gosnell (sitting as a High Court Judge) stressed that reasons for delay are not self-proving, even in cases where serious sexual assault is alleged. He refused to disapply the time limit where the claimants gave no good reasons for the delay.

**Cases concerning sexual abuse**

76. Ms Kaufmann KC cites two sexual abuse cases (at §28) where, in the context of delays of more than 20 years, the claims were allowed to proceed. These are *Raggett v Society*

*of Jesus Trust 1929 for Roman Catholic Purposes* [2009] EWHC 909 (QB); [2010] EWCA Civ 1002 and *FZO v Adams* [2018] EWHC 3584 (QB).

77. In *Raggett*, the claimant alleged sexual abuse by a teacher which took place over a period of several years until he was 15 years old. His claim had become statute-barred approximately 28 years before he issued proceedings. Swift J exercised her s.33 discretion in his favour. Among the features of the case which she regarded as significant were:

   a. There were good reasons for the delay. For over 25 years, the claimant had not characterised the perpetrator's conduct as "sexual abuse" in his mind, but rather as the acts of an eccentric.

   b. The central facts were only partially in dispute, limiting the potential for evidential prejudice arising from delay. The defendants did not seriously dispute that the perpetrator had been guilty of some abuse, in the form of filming the claimant naked and fondling him sexually, but only matters of duration / severity of abuse.

   c. Although the perpetrator had died by the time the claim was commenced, he had written letters to the claimant which were consistent with the claimant's account, including at least one which made thinly veiled references to abusive conduct of the nature alleged. He could not credibly have denied the abuse.

78. In *Adams*, which concerned a 30-year delay, the High Court (Cutts J) disapplied the limitation period in circumstances where:

   a. There were good reasons for the delay. The parties agreed that it was not until the claimant (who was a child) suffered a breakdown around 4 years prior to commencing proceedings that he had come to the view that what had occurred to him at the hands of the first defendant was abuse. The judge further found that the delay in bringing the claim was due to *'the grooming and emotional manipulation of the claimant which caused him to depend on the [perpetrator] and to tolerate his behaviour rather than to sue'*.

    b.  As in *Raggett*, there was no dispute between the parties that the abuse had occurred, only limited dispute about its extent ([162], [189]).

    c.  The perpetrator had been convicted of multiple counts of serious sexual offences against the claimant only a year prior to the commencement of the civil proceedings.

    d.  Both the claimant and perpetrator remained living and '*able to give detailed evidence about what happened*'.

79. By contrast, where – as is frequently the case – the delay is not reasonably explicable, and/or there is serious evidential prejudice, it is highly unlikely that the primary limitation period will be disapplied. For example:

    a.  In *TZ v Manchester City Football Club* [2022] EWHC 7 (QB), eight men brought claims against a football club alleging that they had been sexually abused by a football coach when they were between 10 and 14 years old, the claims being more than 25 years out of time. By the time of the claims, the football coach had been convicted of offences against six of the claimants, and the football club defendant did not challenge their accounts of abuse. Despite this, the passage of time meant that there was no longer sufficient documentary evidence which would establish the vicarious liability of the club, and it was not equitable for the claim to proceed.

    b.  In *Murray v Devenish* [2018] EWHC 1895 (QB) the Court refused to disapply the limitation period in a case of historical alleged sexual abuse of a child by a volunteer teacher, brought with a 34-year delay. The death of the alleged tortfeasor left the defendant significantly prejudiced, its lawyers being unable to take instructions on how to cross-examine the claimant. Absent such instructions, *'it would have been professionally improper for [counsel for the defendants] to suggest that [the claimant and his witnesses] were not telling the truth'* (¶104).

c. In *EF v The Catholic Child Welfare Society* (above), the limitation period was not disapplied where no good reasons were provided for the 29-year delay in bringing a claim in respect of the alleged sexual abuse of children.

d. In *JL v Bowen* [2017] PIQR P11, where the claimant had at all material times been over the age of consent (16), there had been delay of between 21 and 23 years since the last allegedly tortious (non-consensual) sexual activity, and the alleged perpetrator had died. The issue of consent was live in the proceedings, and the absence of the alleged perpetrator *'... in the context of a reverse burden of proof [by reason of the criminal conviction of the alleged perpetrator], was highly prejudicial to the [defendants]'* [40]. That prejudice was *'all the more apparent'* in circumstances where the claimant's evidence, 20+ years on, lacked cogency and consistency. Moreover, the claimant had unjustifiably delayed bringing the proceedings for 11 years after the alleged perpetrator's criminal conviction; his reasons for delay were neither good nor understandable. The Court of Appeal overturned the first instance decision to disapply the limitation period.

**Limitation in this case**

80. Ms Kaufmann KC has not expressed any view on the likelihood of the English Court disapplying the primary limitation under s33 Limitation Act 1980 on the information presently available (Kaufmann §§34 – 39).

81. Ms Kaufmann KC notes at §39 that *"The Court will also consider whether the Claimant has good reasons for any delay in bringing her claim".*  As Counsel for the Claimant in a claim which has already been issued, Ms Kaufmann KC must know what the Claimant's reasons are, and how good (or not) they are. However, they are not set out in her declaration or any other materials to which this Court, or Mr Fayed and his legal team have access.

82. Ms Kaufmann KC rightly states (at §11) that, because limitation is a substantive defence in English law, it is for a defendant to raise it. However, there is no reason to expect anything else to happen in the English Proceedings. It is an obvious defence for

the Defendant to raise. The most that can be said is that it is not yet known which defences the Defendant will rely upon. That in turn is because the Claimant has not arranged for proceedings to be served. If the Defendant had indicated to the Claimant that it would not raise a limitation defence of limitation, I would have expected either Mr Meeran or Ms Kaufmann KC to have made this Court aware of that fact since it would negate the need for their argument on the matter. I therefore assume that they expect the Defendant to raise a limitation defence.

83. Once limitation has been raised by a defendant and is in issue in proceedings, the burden of proof falls on the claimant to satisfy the court of the date upon which the cause of action accrued, including, if relevant, when she first had knowledge for the purposes of s14 Limitation Act 1980 (see *Crocker v British Coal Corp*, Times, 5 July 1995).

84. In assessing in this Declaration how the English Court is likely to determine the issue of limitation (if the claim were to proceed), I have considered only the facts presently before this Court. The facts relevant to limitation are:

   a. The *Brief details of Claim* in the claim form, which begin: *'The Claimant claims damages for personal injuries and consequential losses….*

   b. The English Proceedings concern alleged actions by the two brothers of Mr Fayed, Mohamed Al Fayed and Salah Fayed, both of whom are deceased.

   c. This is not a case where the Claimant states that she only became aware of an injury years after it occurred. The allegations in the Claim Form are that she was assaulted by way of medical examination, and abused by way of physical, psychological, verbal and sexual abuse and assaults including rapes by Salah Fayed.

   d. This Court has no information about the dates on which those matters are alleged to have occurred. The dates have been redacted in the exhibited copy of the claim form. Save that the Claimant states that she was 19 years old (therefore an adult) when she commenced her employment at Harrods (ECF No. 1 at p2), and that that was *'in the mid 1990s*, (p8), this Court has no information to place the events in time. This Court does not know how old the Claimant is now, or

how long after she started working at Harrods the events are said to have taken place.

    e.  The Claimant underwent a medical examination *"after [her] escape"* (ECF No. 1 at p8).

85. The Claimant *'in an effort to seek protection… shared, painfully, the details of her trafficking with a member of the Fayed family, who told her that he knew of others. [The Claimant] knew this to be true as, while she was held captive, she was shown explicit Polaroid photographs… of other women or girls who were physically and sexually abused as part of the Harrods Trafficking Venture'* (ECF No. 1 at p8). However, the Claimant offers no details as to when the alleged conversation took place, which member of the Fayed family she allegedly spoke with, whether that person is alive, what, if any, response she received, and what if any subsequent steps she took.

86. The Claimant states that she *'had been required to sign an expansive non-disclosure agreement'* (ECF No. 1 at p8), but that the terms of the non-disclosure agreement is not described in the claim form, neither has a copy been provided in these proceedings.

    a.  The Claimant alleges that she *"was threatened and harassed and knew that Harrods' head of security, John McNamara, had bragged of the family's ability to handle the Metropolitan Police and to commit crimes with impunity"* (see ECF No. 1 at p8). No details have been given to this Court regarding the dates of those alleged matters, what was allegedly said or done, or whether the Claimant herself went to the Metropolitan Police or any other police force.

    b.  ████████████████████████████ (Dr Catella §3).

87. As the claim is stated in the claim form to be for damages for personal injuries, the English Court will apply the limitation period prescribed by s11 Limitation Act 1980, i.e. three years from either (a) the date on which the cause of action accrued; or (b) the date of relevant knowledge (if later).

88. On the assumption that Harrods Ltd will contend that claims arising from the Claimant's 30+ year-old factual allegations are time-barred by operation of the

applicable three-year limitation period, the Court is likely to approach the question of knowledge in the following way:

    a.  The Court will consider when the cause of action accrued. Based on the information available, this appears to have been in the mid-1990s. On the Claimant's account, of starting work in the mid-1990s (which I interpret as meaning between 1993 and 1997), the events alleged occurred up to 32 years before the Claim was issued. If the last alleged tortious event took place in the mid-1990s the entire cause of action accrued at least 27 years before the Claim was issued.

    b.  The Court will then go on to consider whether the date on which the cause of action accrued is the same as the date of knowledge. The Claimant alleges she is the victim of sexual assault and trafficking. She makes no allegation that she was unaware of her assault or trafficking at the time they allegedly occurred in the mid-1990s; on the contrary she asserts that she recounted such matters to a member of the Fayed family. Applying the principles in *Spargo* (above) to the available facts, there is no basis for concluding that the Claimant lacked relevant knowledge at the time of the alleged events.

89. Having made a finding on date of knowledge, the Court will need to consider whether it is equitable to disapply the 3-year primary limitation period in its discretion under s33 by reference to the prejudice to the parties arising from the delay. The Court will have regard to all of the circumstances of the case, including the six statutory factors. I shall consider each of those factors in turn, before assessing the wider circumstances of the case.

**A. The length of, and the reasons for, the delay on the part of the plaintiff (i.e the Claimant)**.

90. Unlike in *Raggett* where the claimant stated that he had not at the time characterised the activities as "sexual abuse", the Claimant underwent a medical examination after her escape and, she alleges that believing that she needed protection, shared details of her allegations with a member of the Fayed family. There is no suggestion before this

court that she did not know the nature of her allegations at the time the causes of action accrued.

91. Except for the Claimant's reference to a non-disclosure agreement, the terms of which are not before the Court, the Claimant has not raised any matter which might explain the delay or any part of it. The Claimant does not specifically allege that the purported non-disclosure agreement caused or contributed to the delay. In the absence of the alleged agreement and any positive case or evidence about its impact/importance, no weight can be attached to it.

92. There is accordingly no basis upon which it can be concluded, on the evidence provided to this Court, that there is good reason for some or all of the delay on the part of the Claimant, let alone sufficient to support a conclusion that it is equitable to disapply the primary limitation period.

## B.    The effect of the delay on the cogency of the evidence

93. I am not in a position to assess the effect of the delay on the cogency of the evidence of the Claimant, there being no declaration from  the Claimant before this Court, and no particulars of claim or letter of claim in the English Proceedings having been provided for this Court's consideration.

94. As I have noted above, the English courts recognise that long delays generally result in substantial evidential prejudice (*TA*, above, at [40]). The Claimant has provided no declaration or evidence on her own account, so the quality of her recall and the cogency of her evidence cannot be even provisionally gauged.

95. Delay in personal injury cases generally causes evidential prejudice both to liability and quantum (*Cain*, above, at [39]). Here there is obvious specific prejudice with regard to liability, in that both Mohammed Al-Fayed and Salah Fayed are deceased. In addition, the sale of Harrods took place in May 2010 and the English Proceedings were started more than 14 years after Mohamed Al-Fayed and Salah Fayed left the business. I, and this Court, have no knowledge of the disclosure Harrods has given (if any) or will give

in the English Proceedings, or of whether, and if so how and when, any attempts have been made on the Claimant's behalf to obtain disclosure from Harrods.

96. As to causation and quantum, the sealed medical declaration of Dr Catella indicates that ████████████████████████████████████████████. The Claimant has experienced approximately thirty years of life events and vicissitudes since the alleged events occurred, such that there will inevitably be a prejudicial impact upon the exercise of assessing and attributing symptoms/harm said to arise from the allegations in the English Proceedings.

97. As matters stand, there looks to have been a considerable impact upon the availability/cogency of relevant evidence of the Claimant's delay in bringing the proceedings, as would be expected after the passage of 30+ years. There is no material suggesting a lesser or mitigated impact of the delay upon the evidence, such that it might be equitable to disapply the primary limitation period.

98. The position in the English Proceedings appears at present to be comparable with *Murray v Devenish* and *JL v Bowen*, above, both cases in which the claimants had initiated proceedings after the perpetrator(s) had died, having delayed for a very considerable period of years. The primary limitation period was kept in place in both cases.

## C.    The conduct of the defendant after the cause of action arose

99. The Claimant raises two matters in summary form in the Opening Application which are of possible relevance to this part of the test: the non-disclosure agreement and the allegation that she was threatened and harassed by Harrods' head of security. As stated above, there is insufficient available information about both.

## D.    The duration of any disability of the plaintiff

100. This appears to have no relevance.

**E.    The extent to which the claimant acted promptly and reasonably once she knew whether or not the act or omission of the defendant might be capable of giving rise to an action for damages**

101. As stated above, on the facts before this Court, the Claimant must have known of the facts giving rise to her claim when the alleged tortious acts occurred. The Claimant has proffered no explanation for the delay of 30+ years. An unexplained delay of that length is self-evidently neither reasonable nor prompt (see, e.g. *AB* and *EF v Catholic Child Welfare Society*, above).

**F.    The steps, if any, taken by the plaintiff to obtain medical, legal or other expert advice and the nature of any such advice**

102. The Claimant has put no material before this Court to suggest that she required expert advice in order to bring her claim in time or with the minimum of delay, or that – if she did reasonably require such advice – she took any or prompt steps to obtain it.

**G.    The other circumstances of the case**

103. The Claimant apparently failed to follow any pre-action process before issuing her claim. It appears that she may not have communicated any or even basic details of her claims ahead of the issue of proceedings, so as to mitigate the impact of the long delay.

**H.    Conclusion on Limitation**

104. If the Claimant were to seek to persuade the English Court to disapply the primary limitation period under s33 Limitation Act 1980 by relying upon the facts known to this Court, the application would almost certainly fail.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 6, 2025